Argued and submitted December 13, 2004, reversed and remanded for
reconsideration July 27, 2005

Tara L. CONSTANTINE,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Money Tree Software,
*Respondents.*

03-AB-2358; A123474

117 P3d 279

Julia Olsen argued the cause for petitioner. With her on
the brief was Legal Aid Services of Oregon.

Richard D. Wasserman waived appearance for respondent Employment Department.

No appearance for respondent Money Tree Software.

Before Landau, Presiding Judge, and Armstrong, Judge, and Deits, Judge pro tempore.

ARMSTRONG, J.

ARMSTRONG, J.

Claimant seeks review of an order of the Employment Appeals Board denying unemployment benefits. Claimant assigns error to the board's conclusion that she voluntarily left work before pursuing all reasonable alternatives. We review the board's conclusion for substantial evidence, substantial reason, and errors of law, ORS 183.482(8), and reverse and remand.

We state the pertinent facts found by the board. Claimant worked for Money Tree Software (employer) in a technical support position from June 16, 1997 to June 13, 2003. She married in 2001. Her husband physically abused her. At various times, he hit her, pushed her off of a bed, pushed her into walls, pulled on her arms, and threw things at her. Claimant's husband also went to claimant's workplace and argued with her on several occasions.

Claimant did not contact the police or seek medical attention related to her husband's abuse until May 2003. At that time, claimant's husband began drinking more alcohol than he had before. He hit claimant more often. On the evening of May 31, 2003, claimant's husband pushed claimant around and shoved her against a wall, bruising her chest and one of her arms. That night, claimant and her husband agreed to dissolve their marriage. Claimant's husband subsequently moved out of the house, and claimant changed the locks.

Claimant decided that she would be more secure if she moved out of Albany, where she and husband lived, to another city. On June 2, 2003, claimant gave employer two weeks notice that she would be leaving work to move to another city because her husband had been abusing her and she was concerned for her own safety. Claimant's supervisor knew from prior conversations with claimant that claimant's husband had been abusing her. Claimant did not talk to her employer about possible alternatives to leaving her job. Her employer did not have other locations to which claimant could have transferred. Claimant did not have the option of taking a leave of absence.

On June 3, claimant sought and obtained a restraining order against her husband. The order prohibited claimant's husband from contacting or attempting to contact her in person or by telephone or mail. The order also prohibited her husband from going to his son's daycare center. When claimant's husband went to collect his belongings from his and claimant's residence, police officers accompanied him.

After she obtained the restraining order, claimant believed that her husband was very angry with her. She was uncertain about what he would do. He began calling her at work. Claimant talked to him when he called, despite the restraining order, because she was afraid of what he would do if she refused. When he called, he asked claimant about her plans and mocked and otherwise harassed her. Claimant did not report her husband's calls to the police or a court because she was afraid that doing so would make him angrier. Claimant left work on June 13 and moved to another city.

Claimant then sought unemployment benefits. The board concluded that "claimant voluntarily left work without good cause" and was therefore ineligible to receive unemployment compensation under ORS 657.176(2)(c). In reaching that conclusion, the board considered ORS 657.176(12), which provides:

"(a) As used in this subsection, 'domestic violence' means the physical injury, sexual abuse or forced imprisonment, or threat thereof, of a person by another who is related by blood or marriage or has a significant relationship with the other person at the present, or who has been related or has had a significant relationship at some time in the past, to the extent that the person's health, safety or welfare is harmed or threatened thereby.

"(b) An individual may not be disqualified from receiving benefits under subsection (2)(c), (d) or (e) of this section or be considered unavailable for purposes of ORS 657.155 if:

"(A) The individual is a victim of domestic violence;

"(B) The individual's health, safety or welfare is endangered at a current workplace, or would be endangered at an available workplace, by a related person referred to in paragraph (a) of this subsection; and

"(C)  The individual acts as a reasonable and prudent person of ordinary sensitivities and has pursued all reasonable alternatives before voluntarily leaving work. Reasonable alternatives include, but are not limited to, actions such as seeking a restraining order, relocating to a secure area and seeking reasonable accommodations from the employer such as a transfer within the company."

The board concluded that, under ORS 657.176(12)(b), claimant was a victim of domestic violence and that she was endangered at her workplace. However, the board also concluded that claimant was disqualified from receiving unemployment benefits because, contrary to ORS 657.176(12)(b)(C), she had not pursued "all reasonable alternatives before voluntarily leaving work." The board reasoned:

"ORS 657.176(12) specifies that an individual who is a victim of domestic violence must pursue *all* reasonable alternatives before leaving work. In the present matter, claimant had the reasonable alternative of obtaining a restraining order and waiting to see if her husband would honor it, before giving the employer notice that she would be leaving work in two weeks.

"Claimant was able to obtain a restraining order against her husband the day after she gave her resignation notice. If claimant's husband called her at work despite the restraining order, she reasonably could have reported his violations of the restraining order. In the absence of any futile attempt by claimant to obtain a restraining order and have it enforced, we are persuaded that the court would have issued and enforced the order.

"Additionally, given that claimant's husband did not attempt to enter their residence except when allowed to do so in the company of law enforcement officers following imposition of the restraining order, and did not attempt to enter claimant's workplace after she and he agreed to get a divorce, we are not persuaded that claimant's situation was so immediately dangerous that she could not reasonably have obtained a restraining order before resigning, and subsequently requested that the restraining order be enforced. Claimant alleged that her husband was hostile toward her after issuance of the restraining order, but she did not allege or show that her husband threatened her

with in-person contact or violence during their telephone conversations. Claimant's conduct in working for the employer for nearly two weeks after she obtained the restraining order persuades us that she did not believe she was in imminent danger. We are persuaded that claimant quit her job prematurely, before pursuing all of her reasonable alternatives."

(Emphasis in original.)

Claimant seeks review of the board's decision, arguing that the board erred in concluding that she had not pursued all reasonable alternatives before leaving work, as provided in ORS 657.176(12)(b)(C). She argues that, under OAR 471-030-0150(4), she did pursue all reasonable alternatives before she left her employment. That rule provides that, "[a]s used in ORS 657.176(12)(b)(C), the term 'reasonable alternatives' includes any actions or series of actions that, in the perception of the individual, best guarantee the safety of the individual." She argues that, under that rule, an alternative to leaving work is reasonable if it is subjectively reasonable to a victim of domestic violence whose health, safety, or welfare is endangered at his or her current workplace. Therefore, she argues, obtaining a restraining order against her husband and taking steps to enforce it was not a "reasonable alternative" to leaving work because she did not believe that it was reasonable.

She also argues that she was not required to avail herself of one or more of the reasonable alternatives enumerated in ORS 657.176(12)(b)(C) because, by providing that reasonable alternatives "include, but are not limited to, actions such as" those alternatives, the text of the statute indicates that those alternatives are exemplary but not mandatory.

Claimant also argues that, even if obtaining a restraining order was an alternative that she was required to pursue, she in fact did so before she left her employment. She contends that the board erred by not considering actions that she took after she submitted her resignation but before she left her employment in deciding whether she voluntarily left work without good cause.

Finally, claimant contends that the board's conclusion does not follow from its findings of fact, that the board's decision is inconsistent with Employment Department policy, and that the board's decision is inconsistent with both legislative intent and public policy.

██  We begin with whether the board should have considered claimant's actions between the time that she gave notice and the end of her employment. Under ORS 656.176(2)(c), a person does not leave work until the end of the last day that the person works. *Ponder v. Employment Dept.*, 171 Or App 435, 448, 15 P3d 602 (2000). Claimant obtained a restraining order before her last day of work and considered whether she could safely seek to enforce the order when her husband violated it. The board erred in failing to consider the order and claimant's decisions about its enforcement in assessing whether claimant had pursued all reasonable alternatives before she left work. Although the board concluded that claimant did not believe that she was in imminent danger because she stayed at her job for two weeks after she gave notice, that conclusion ignores the relevant reasonable alternatives question: whether claimant believed, at the time that she left work, that she had alternatives to leaving that were sufficient to guarantee her safety. The board's finding that, during her last two weeks of work, she did not believe that she was in imminent danger is not a finding that, at the time she left work, claimant believed that she had reasonable alternatives to leaving. Given our conclusions, we need not address claimant's remaining arguments.

Reversed and remanded for reconsideration.